[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After living together for about a year, the parties married on October 10, 1981, a total of 17 years. It was the second marriage for the Wife and the third for the Husband. They separated in November of 1994 but continued a relationship into 1996. By complaint dated August 28, 1997, the Wife instituted this action claiming a dissolution of marriage, alimony, attorney's fees, an assignment of Husband's estate, and other relief. The Husband, who appeared through counsel, did not file an answer or cross-complaint but was heard on all issues over a three day trial.
No children were born to the Wife during the marriage, however each party had one child from former marriages, both of whom are adults. The Wife's daughter lived with the parties until she went to college in 1986 and received considerable support from the Husband. The Husband's son did not live with the parties but visited from time to time. Both children testified during the trial in support of their respective parent.
The Wife is 52 years of age and a high school graduate. The Husband is 56 years of age and has a bachelor's and master's degree in education.
The Wife is in apparently good physical health. Emotionally, CT Page 442 she has been diagnosed as having battered wife syndrome and post-traumatic stress disorder. Her therapist, Ms. Carey Rubin, testified that she has all the symptoms of a battered woman who has experienced physical, verbal and emotional abuse. She was described as suffering from feelings of helplessness, immobility, anxiety, rapid heartbeat, and self deprecation. For the past three years she has been in individual and group therapy to help her deal with her emotional problems and has demonstrated considerable progress.
The Husband has very serious medical problems of his own including multiple sclerosis, which he acquired in the early 1990's, and a heart condition. He has also had knee and back surgery. His health deficiencies require regular visits to the doctor, the use of crutches to walk, and periodic dosages of avonex, mevacor, prozac, and cardizem medications. His physician, Dr. Kenneth C. Siegal, testified that, due to his age, he is in the worst category of patients who have multiple sclerosis. Prognosis is not good and there is a strong likelihood he will need to have assisted living in the future. Despite apparent depression over his predicament, he continues to work without absences and is well motivated which helps in his treatment.
At the time of the marriage, the Wife owned a residence which she sold and claims to have netted $18,000. The Husband also owned a residence which he sold and claims to have netted $90,000. They each further claim to have put the money received into the purchase of the lot located at 189 Brushy Hill Road in Newtown and the ultimate construction of the marital domicile thereon. Neither party produced any documentation, such as closing statements or canceled checks, in support of their claims. The Husband also worked 14 years for the Bridgeport Board of Education prior to the marriage during which time he accumulated credits towards his pension.
Throughout the marriage the Wife was employed as an office manager in a dental office. Her current gross weekly income of $562 ($29,224 per year) would appear to be her capacity.
The Husband worked as a teacher and most recently as the District Suspension Officer for the Bridgeport Board of Education. His gross weekly income of $1397 ($72,635 per year) would appear to be his capacity. It is also noted that the Husband worked at a variety of second jobs from time to time to supplement his income. In view of his age and physical condition CT Page 443 second jobs in the future would appear to be out of the question. Retirement is most likely for him which would make pension income of approximately $41,640 per year available.
Two pieces of real estate were acquired during the marriage, the marital domicile at 189 Brush Hill Road which has a fair market value of $285,000 according to the Wife and $262,500 according to the Husband. A second piece, a lot in Charlestown, Rhode Island, is valued at $45,000 by the Wife and $20,000 by the Husband. Neither party submitted appraisals of either piece. Most likely, given the testimony of the parties, the higher values are more reasonable.
A pension plan expert, Barry Kaplan, testified for the Wife as to the present day value of the Husband's pension in different retirement scenarios. If the Husband retired July 1, 1999, he would be entitled to receive $3,296.21 per month ($39,554.55 per year) for life which would translate into a present day value of $657,501. If the Husband retired July 1, 2001, he would be entitled to receive $3,469.69 per month ($41,636,28 per year) which would translate into a present day value of $588,179 (see Plaintiff's Exhibit F). The parties were married for 17.3 years of the 32.8 years during which the Husband worked for the Board of Education and earned the pension. In effect, 52.7% of the pension was earned during the marriage.
The Wife's automobile, a 1993 Nissan Sentra has a fair market value of $4,500 while the Husband's 1995 Dodge Ram has a fair market value of $14,000. Other personal property, furniture, jewelry, furnishings, and clothing, was fortunately divided between the parties in an equitable manner and was not valued. The Husband also owns two boats with a total value of $4,000.
The Wife has a multiplicity of deferred compensation plans totaling $45,297.57. During the trial it was revealed that the Husband had a Washington Trust savings account with a total balance of $60,000 which inexplicably rose to $67,000 by amendment to his financial affidavit. When interest and subsequent contributions are added, the balance rises to more than $70,000 (see P's Exhibit K). He also testified to a Peoples Bank account with a balance of $1,000 which was not shown on his financial affidavit and for which no documentation was ever produced. He further discovered to have erroneously reported the value of his Prudential annuity to be $40,000 when in fact it was $60,851.11 (see Plaintiff's Exhibit DD). It was the CT Page 444 court's impression that the Husband was less than forthright in his response to discovery although he did ultimately own up to the assets owned.
The parties had a station in life commensurate with their ages, education, and income. Their relative contributions to the acquisition, appreciation, and preservation of value of the acquired assets, the Husband's claims to the contrary, would appear to be reasonably equal. Parties contribute in different ways in the shared enterprise that is a marriage. Given their present circumstances it would seem unlikely that either party would have a greater opportunity to accumulate substantially more than the other by way of assets or income in the future.
The Wife's financial affidavit lists $8,000 in liabilities in addition to a balance of attorney's fees for this action of $9,960.60. The Husband lists a MasterCard debt of $11,000 on his affidavit.
It would serve no useful purpose to chronicle the causes for the breakdown in the marriage which is clearly irretrievable. The Wife claimed, and the court believed, that the Husband was physically, emotionally and verbally abusive over a long period of time. The Husband claimed but failed to offer any proof other than his suspicion, that the wife was unfaithful. He also testified she was unsupportive of him in his illnesses, relations with his relatives, and in his difficult employment environment. Suffice it to say the Husband's recriminations were not credible.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of an irretrievable breakdown.
Alimony
The Husband shall pay to the Wife alimony of $200 per week CT Page 445 until his retirement from the Bridgeport Board of Education, the death of either party, or the Wife's cohabitation as defined in Conn. Gen. Stat. Sec. 46b-86.
Real Estate
The Charlestown, Rhode Island lot shall remain the sole property of the Husband.
The marital residence located at 189 Brushy Hill Road in Newtown shall be immediately listed for sale and sold to the buyer with the first reasonable offer. Until its sale the Husband shall have exclusive use and occupancy and shall be solely responsible for all costs concerning same. The listing broker shall be Bob Tendler who shall determine the listing price reasonably calculated to bring about an early sale. The parties shall accept any reasonable offer within 5% of the listing price. Net proceeds, defined as gross selling price less balance on the first mortgage, real estate commission, agreed upon fix up costs, and customary closing costs, shall be divided 60% to the Wife and 40% to the Husband. The parties shall give their full cooperation to the listing and sale of the property. The court will reserve jurisdiction to resolve any disputes.
Personal Property
The parties have previously divided their personal property. All the items on the Wife's list of personal property attached to her claims for relief shall be hers with the exception of the camera which shall remain the Husband's property. The Husband shall retain his two boats and each party shall retain their respective automobiles.
Pension
The Husband shall assign to the Wife pursuant to a Domestic Relations Order (DRO), a 26.4% interest in his pension as of December 31, 1998 with a joint survivor annuity. Any appreciation in the pension thereafter shall belong solely to the Husband. The Wife's counsel shall have the responsibility of preparing the DRO, the cost of which, estimated to be $500, shall be equally shared by the parties. At the Wife's option, she may take out insurance on the Husband's life to cover any losses she might incur in the event of the Husband's death prior to retirement. The Husband shall give his full cooperation to the processing of CT Page 446 said insurance. Until approved by the plan administrator, the court shall retain jurisdiction.
Life Insurance
The Husband shall name the Wife beneficiary on his decreasing term Prudential Life insurance policy in the original face amount of $120,000 until he no longer has any obligation to her for the payment of alimony.
Division of Liquid Assets
The Wife shall retain her deferred compensation plans shown on her financial affidavit to be $45,297.57.
The Washington Trust savings account (approximate balance $70,000), Peoples Bank savings account (approximate balance $1,000), and the Prudential annuity (approximate balance $60,851.11) shall be lumped together and divided equally between the parties.
Liabilities
Each party shall be responsible for their own liabilities.
Counsel Fees
The Husband shall pay the sum of $5,000 towards the Wife's counsel fees and costs within 30 days from date.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein. Plaintiff's counsel is to prepare the judgement file, have it certified by defendant's counsel, and file it with the court within 30 days.
CUTSUMPAS, J.